Good morning. I may please the Court, Pauling, on behalf of Mr. Proto. He appeals his convictions for possession with intent to distribute methamphetamine and the use of a firearm to facilitate that crime. He was sentenced to 23 years, and the trial occurred in Minnesota. I think it was upstairs. He raises a common issue with an uncommon argument, and the common issue is the 404B admissibility of evidence of another crime on his behalf. And the uncommon argument is that the recent social science research has undercut the idea that a cautionary instruction is workable in the 404B area, and that in this particular case, it was ineffective. It's a unique argument, but it's based upon the recent science rather than 60 years of case law, that the collateral argument is that when a cautionary instruction is unworkable, then the defendant's presumption of innocence more or less disappears and is not protected. So that's our claim. In terms of the facts, they were largely undisputed. There were two arrests of — Wait a minute. Your claim is cautionary instructions are ineffective. Yes, I am. And therefore, what, though? Therefore, they're supposed to — Therefore, there's error always in 404B cases? Well, in this case in particular. Okay. How would this case be different from others? Well, because in this case, they introduced a certified conviction, and the cautionary instruction asked the jurors to decide whether or not that was provable, whether by a preponderance of evidence the conviction happened, which is an absurd instruction, absolutely absurd, because there's no jury in the world who would say a certified conviction isn't evidence of other crime. So the first part of the instruction was — It's a standard. It's a standard. I know. I'm trying to move the paradigm here. I really am. And I'm happy you gave me a chance to do this. It's great to be here again, but — Well, you're saying it was so obvious the judge shouldn't have told the jury that they had to find it by a preponderance? He should have just let them go without that? Yeah. I mean, how could they make that decision? I mean, how could they not make that decision? I don't understand. I mean, I'm — I thought you were concerned that the part cautioning them not to use it as propensity evidence was ineffective. Well, that's my second piece. You got ahead of me. Okay. Well, I'll slow down, but I didn't say much to the first piece. Well, the second piece is that — If it's obvious that he was convicted, then what's the harm of telling them they have to find that by preponderance? Well, it's an absurd finding. That's why. You're asking them to do something that's absurd. That's the harm of it. I mean, you know, you're asking them to follow an instruction that — you're asking them to make a choice that they can't make. Now, in terms of the, you know, the propensity issue — All right. Go ahead. No, if you have another question — You can concede it if you don't want them to be instructed to make the finding. But what's your second point? The second argument is that, you know, by instructing them that the evidence goes into intent, common scheme, mortis op rende, close in time, all those catch-all phrases of 404B evidence, that that's a nice instruction, but then the research is that the jurors have a hard time distinguishing 404B evidence from the overall guilt of the defendant. So on the one hand, you say this is relevant for intent, and on the other hand, they can't determine — they can't use the intent evidence to determine whether, in this case, the defendant intended to do his crime. I mean, it's almost impossible to understand. What I try to do in the brief and what I've tried to do with a lot of district court judges is say, look, you know, the research is that these are really difficult to follow. These instructions are difficult to follow. And so we are confronted with the idea that jurors will always follow instructions, which is the standard idea, and it fosters great respect for the judge and the court to be following instructions. On the other hand, in this particular area, the research, as I've read it, is that these instructions are ineffective. So where are we with this? I mean, it is a paradigm shift that I'm trying to make. I know I'm going up a hill here, but it's a good hill to climb, I think. In this case, the 404B evidence was just devastating. Mr. Protos is arrested five years before the case. He's stopped in a car. There's a gun in the car. There's 140 grams of meth in the car. He confesses to the arresting officer that he's back in the game, meaning that he's going to continue criminality, that he's incorrigible. I don't know how else you could interpret back in the game. And what's worse is that the police officer that testified to all this is now part of the Fugitive Task Force arresting fugitives, and what's worse yet is that they introduced the conviction as a crime of violence in Minnesota with the notion that the felon in possession was admitted to, but the meth wasn't. This research to which you're referring, I didn't see anything cited in your table of authorities. Did you have some studies in mind? I cited the major book here. The major book. Okay. Yeah, that cites the studies inside it. I mean, it's the guy that's from USC. It's published by Harvard. I urge you to read it. That's what I was asking. I just didn't. You mean the Dan Simon's treatise? Yeah, yeah. All right. It's a fabulous book. It also discusses a lot of the other psychology in law, and it tries to blend the social science research to the current day, and the point I'm trying to make is that I've raised this issue of the effectiveness. I've cited a scientific treatise, and the government has not refuted this. I mean, the brief, which is very well done by Mr. Dunn, my old friend, doesn't refute the science that I've cited here. Well, counsel, I certainly, speaking for myself, appreciate your candor to the court about the state of the law, and particularly the state of the facts in this case. But as a panel on an intermediate court, what authority would this court have to vary from the existing president upholding the very type of ruling that you appeal? Well, you have authority on each case to determine prejudice. So how would you write the panel opinion? I'm glad you asked. Here's how I would write it. I would say, here are the facts, here's the 404B evidence, those are the first three paragraphs. And I say counsel for Mr. Proto has asserted, based upon a learned treatise in the law published by Harvard, that during instructions I don't think Judge Collins would agree. That wouldn't help. Well, I don't know. I'm impressed. But I think the professors from USC, if that helps. Go ahead. If I were writing this, I would love to write this, too, by the way. But that's not my job. But he cites learned treatise that's accepted in the industry, that during instructions are difficult to follow on this ground. The government has not disputed that learned treatise. The court is concerned about the practice here of offering 404B evidence on the standard cliques of the world and that the evidence of prejudice is asserted and not rebutted. That's what I would do. And then I would cite that the 404B evidence tends to diminish the presumption of innocence, which is really important for a guy that's going to die in prison here. He's 45. He's got 23 years. He's not going to make it likely. And I would also say on harmless error, the paragraph on harmless error, which is always in these cases, I'd say the government has invited the error. They've asserted this is very important evidence for them. And the court does not enjoy the government's shifting positions. On the one hand, they tell the judge that the evidence is very important. We want it in. And then on the back end of all these appeals, these 404B evidence, they argue that it's harmless error. So on the one hand, it's really important evidence. And on the other hand, it's harmless. So it can't be harmless if it's important. And I would reverse the conviction. Unfortunately, I'm out of time, but I'll rest now. Do you have a question, Judge Loken? You haven't taken it, and there's nothing wrong with making novel and unique arguments, but of course, they're typically not for a panel with as much law as there is. And I haven't heard you emphasize the prejudicial nature of the officer testifying. And of course, district courts have discretion to limit that. And you haven't talked about the typical 404B aspects. It seems to me all you've put in here, your hypothetical opinion, is stuff that we don't have the authority as a panel to hold, which is fine. I mean, it wouldn't be the first time that a lawyer has made an argument that in effect is for the in-bank court and sometimes prevailed by comment on it. Well, to answer briefly, the evidence was devastating. I mean, the guy, I mean, it was prejudicial, and I briefed it. But would you just do away with limiting instructions altogether because this treatise says that juries have trouble applying them? I think you should take a more nuanced approach going forward. I mean, I think the practice in the district courts of 404B could be shifted a little bit. What's the nuanced approach? I thought your position was instructions are ineffective, so why would they be used at all? I would say, you know, if I were really shooting for the moon, I'd say think again about this rule of inclusivity, that the rule is an inclusive rather than an exclusive rule, because that just, all that does is encourage the court to let all this stuff in. And so when you do that, that is a national debate at the moment. That's really a problem. It's a huge problem on these cases because the people that end up going to trial are looking at huge amounts of time, can't settle the case, and there's always something in the background. So that's what I would, that's my wish list for you, Judge Carleton. Thank you. Thank you, Mr. Ng. Mr. Dunn. Good morning, Your Honors. May it please the Court, Mr. Ng. I've got to lower this. He's a little taller than me. I represent the United States on this appeal, and I was also a lawyer at trial below in front of Judge Brazel. In response to Mr. Ng's argument, I guess I didn't realize until now that, and I thank you for his concession that he's asking for a paradigm change in his brief, because short of a ruling that says there should be no more 404B evidence, I can't think of anything in this case that wasn't a textbook example of how to properly analyze the admission of 404B evidence and a proper way to use 404B evidence at trial. Regarding the evidence of... Didn't the judge list about seven different pieces under 404B? Yes. Is that textbook, or should it typically, would a textbook use by the AUSA be more targeted to a particular element? Well, I think in this case the 404B evidence was knowledge, intent, and motive. So why didn't you limit the offer to those? The government did, and in the court's finding regarding prejudice said, or allowing admission, the court said, and this is in her order, it's at the docket at 79. The fact that the defendant has carried a firearm in the past in connection with his drug trafficking is directly at issue in this case. As the government argued at the pretrial conference, Mr. Proto's past conviction involving a firearm demonstrates his knowledge of guns and his intent to possess them. These are key issues in this case where the government must prove Mr. Proto knew that the firearms found by law enforcement were in his possession. And those were the two, the knowledge and intent. There were two count, two firearm counts. For the June incident, it was just felon in possession, and knowledge was relevant because the firearm was tucked between the center counsel and the driver's seat. Count five, which was possession of a firearm in furtherance of drug trafficking activity, that was where his statement to the officers in 2016 that he needed a gun because he was back in the game and was worried about being robbed was entirely consistent with the evidence at trial and the testimony elicited by the government at trial that drug traffickers commonly carry firearms to protect themselves, their drugs, and their drug money because drug trafficking is an illicit business and you can't call the police to protect yourself from being robbed. You need firearms to protect yourself. And so his statement confirmed that. Now, I will say that I don't know how much more the court or the government could have done at trial to limit the jury's improper use of this evidence. The court's limiting instruction followed this court's guidance in Crenshaw and Drew. Why did accident or mistake get into the instruction, if you were only arguing knowledge and intent? Well, I think she wanted to, I can't speak for Judge Brazel, but I believe she was trying to encompass all possibilities, all possible catch-alls for using 404B. Well, I know, but that's one criticism that often comes up is that the government or the judge shouldn't list every possible catch-all, but should list the ones that are really at issue in the case. Yes. Well, the only other thing I will do, Your Honor, is point, in addition to the court's cautionary instruction, the only time the government mentioned this in its closing argument, it cautioned the jury not to use it for propensity. I argued, and of course, and this was when I was arguing that the firearm was possessed in furtherance of his drug trafficking activities. And of course, we know it, we know defendant's intent from defendant's own words, right? Because that's what he told the cop in 2016. Yeah, I have a gun because I'm dealing drugs again. He told you what his intent was. Now, the judge instructed you, you don't look at 2016 incidents to say, well, if he did it then, he did it again. No, that's improper. Don't do it. But you can use it to look into his mind. What was his intent? What was his knowledge? What was his motive? What was his modus operandi? That's in furtherance of drug trafficking. And so I realize, look, all 404B evidence is prejudicial. That's why they call it other bad acts. But that's not the test. The test is the fourth prong, right? It's materiality, similar in kind, close in time, whether it was proven by a preponderance of evidence and does the prejudice substantially outweigh the probative value. And on the issue of prejudice, we tried to limit the jury's use of that. I don't know how much more you can do to limit a jury's use of 404B evidence other than to have both the court and the prosecutor tell them not to use it for something shallow, that's not salacious. That was my intent. Didn't want them to use it improperly at trial. How many prospective jurors who have not had a criminal law course, do you suppose, could answer the question, what does propensity mean? And how would they answer it? I don't know the answer to that, Judge. But I think the way I... The way I would answer it is, in terms of propensity, what I used was, you can't say, well, if he did it then, then he did it again. And that's common. That's kind of the plain English explanation of propensity. Yes, Your Honor. And that was done here? Yes. I don't think I have any other thing to say, unless the Court has any other questions. I will sit down. I don't see anything. Thank you, Mr. Dunn. Thank you. Mr. King, I think we exhausted your time with our conversation and inquiry. And I don't know that there was some rebuttal that you actually needed to produce. I think you made your point, but you can correct me if I'm wrong. I've said my piece. Thank you, Your Honor. All right.